UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JOHN ASHLEY HALE                                         PLAINTIFF

VERSUS                                           CIVIL ACTION NO. 3:19-CV-813-TSL-RPM

DR. PATRICK ARNOLD et al                          DEFENDANTS

**REPORT AND RECOMMENDATIONS**

       Plaintiff John Ashley Hale, proceeding *pro se* and *in forma pauperis*, has filed yet another 42 U.S.C. § 1983 prisoner civil rights complaint regarding the adequacy of his medical care. Plaintiff is in the custody of the Mississippi Department of Corrections (MDOC). In the instant lawsuit, he has named several MDOC medical personnel as defendants: Dr. Patrick Arnold; Dr. Gloria Perry, Chief Medical Officer for MDOC; and Steven Bonner, Chief Psychiatrist.[1] In addition, he has named Centurion Health Care, a private company who has contracted with MDOC to provide medical services for MDOC inmates. Plaintiff alleges that these Defendants are not providing constitutionally adequate care for treatment of hepatitis C, chronic pain, and mental health conditions. He also purports to raise a claim under the Americans with Disabilities Act (ADA). More specifically, he alleges that Defendants failed to accommodate his hepatitis C by failing to prescribe medication or provide him with a high protein diet.

       Over the years, Plaintiff has filed no fewer than twelve lawsuits related to conditions of confinement. Prior to the instant lawsuit, Plaintiff has filed complaints similarly alleging inadequate medical treatment for hepatitis C, chronic pain management, and mental health

---

[1] The Court previously dismissed Plaintiff's non-medical related claims against Defendants Management Training Corp., Kernesha Price, and Trinity Food Services. Doc. [47] [49] [64] [67]. Plaintiff's medical care claims are all that remain of his original complaint.

issues. *See Hale v. Abangan*, No. 3:15-CV-170-CWR-FKB, 2018 WL 1053520 (S.D. Miss. Jan. 26, 2018); *Hale v. Arnold*, 3:18-cv-754-DPJ-FKB (S.D. Miss.); *Hale v. Smith*, Civil Action No. 3:16-cv-105-DPJ-FKB (S.D. Miss.); *Hale v. Hopson*, Civil Action No. 3:16-cv-772-HTW-LRA (S.D. Miss.) *Hale v. Abangan*, 3:15-cv-170-CWR-FKB (S.D. Miss.).  The Fifth Circuit recently described Hale as "a vexatious litigant" who has admitted to filing "federal lawsuits against his custodians as a means of intimidating them to comply with his demands". *Hale v. Harrison Cty. Bd. of Supervisors*, 8 F.4th 399, 401, 405 (5th Cir. 2021).  At the screening hearing conducted by the undersigned on December 8, 2020, Plaintiff admitted that he has filed prior lawsuits complaining about his medical treatment for hepatitis C, chronic pain, and mental health issues.  Doc. [48] at 7-8, 12.

      Plaintiff was diagnosed with hepatitis C in 1997.  He asserts that Defendants should prescribe direct acting anti-viral therapy because it has a 90 to 95 percent cure rate.  He also wishes to be prescribed a high protein diet to accommodate his liver function issues.  In addition to hepatitis C, Plaintiff suffers from chronic pain and degenerative disc disorder.  With respect to pain management, Plaintiff wants to receive a stronger dosage of Ultram or some other opioid instead of the less effective medications he is receiving from prison medical personnel.  At the screening hearing, Plaintiff clarified that he is currently receiving Ultram, but he feels he should be receiving a higher dosage.  Plaintiff also is dissatisfied with treatment of his mental health issues.  He alleges he suffers from chronic depression, PTSD, anxiety, and personality disorders.  He wants to be prescribed Wellbutrin to treat his depression.  Instead, he is being prescribed medications that he alleges have been proven in the past to be ineffective in treating his mental health conditions.  He further alleges these alternative medications are toxic to his liver.

Defendants have filed motions for summary judgment arguing that the medical records demonstrate there is no genuine issue of material fact on the issue of whether Defendants were deliberately indifferent to Plaintiff's medical conditions. Doc. [74] [79]. Defendants also argue that Plaintiff failed to exhaust administrative remedies prior to initiating this lawsuit. Plaintiff has not filed responses in opposition to the motions for summary judgment.

## Law and Analysis

### Summary Judgment Standard

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). Where the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, all other contested issues of fact are rendered immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Topalin v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992). In making its determinations of fact on a motion for summary judgment, the court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of a material fact and the appropriateness of judgment as a matter of law to prevail on its motion. *Union Planters Nat'l Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131. "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the

movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John v. State of Louisiana*, 757 F.3d 698, 708 (5th Cir. 1985). Once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).

**Medical Care**

To state a constitutional claim for denial of adequate medical care, a plaintiff must demonstrate that defendants were deliberately indifferent to plaintiff's serious medical needs, such that it constituted an unnecessary and wanton infliction of pain. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A prison official is not liable for the denial of medical treatment unless the official knows of and disregards an excessive risk to inmate health or safety. *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). The Constitution guarantee prisoners "only adequate, not optimal medical care." *Spriggins v. LaRavia*, 2012 WL 1135845, at *4 (E.D. La. Apr. 4, 2012) (emphasis in original), citing *Gobert v. Caldwell*, 463 F.3d 339, 349 (5th Cir. 2006). An allegation of malpractice or mere negligence is insufficient to state a claim. *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999). Moreover, the fact that a prisoner disagrees with the type of medical treatment does not constitute a constitutional deprivation. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

A brief examination of the more than 2000 pages of Plaintiff's MDOC medical records clearly demonstrates that Plaintiff has received extensive, ongoing treatment for all three conditions. Accordingly, the undersigned recommends that Plaintiff's complaint be dismissed with prejudice as to all claims and all defendants. For example, with respect to hepatitis C, his condition has been evaluated regularly in the chronic care clinic; and the medical records indicate no problems or complications from his condition. *See e.g.,* Doc. [77-4] at 74; [77-5] at

4

9, 116; [77-6] at 7-9, 12-14, 50-53, 81, 85.  Shortly before he filed the instant lawsuit, Plaintiff's blood test indicated no evidence of fibrosis or active inflammation.  Doc. [77-6] at 85.  Dr. Patrick Arnold, the Medial Director at EMCF, stated that Plaintiff was placed in chronic care for hepatitis C immediately upon entry into MDOC.  Doc. [74-4].  At all times during Plaintiff's treatment, his liver enzyme and fibrosis scores have remained within normal levels.  *Id.*  According to Dr. Arnold, the only exception was on May 7, 2018, when his enzyme level was "marginally high"; however, later tests continued to stay within the normal level.  *Id.*  At the screening hearing, Plaintiff testified that his liver enzyme levels are tested every six months.  Doc. [48] at 13-14.  Based on Plaintiff's normal test results, the constant monitoring and evaluation of Plaintiff's hepatitis C constitutes adequate medical care.  *See Roy v. Lawson*, 739 F. App'x 266, 266-67 (5th Cir. 2018) (per curiam); *Jobe v. Mississippi Dep't of Corr.*, No. 4:20CV39-NBB-DAS, 2021 WL 5225629, at *7 (N.D.Miss. Nov. 9, 2021); *Spiers v. Perry*, No. 1:17-CV-281-RHW, 2019 WL 2373199, at *2 (S.D. Miss. June 5, 2019).

       The medical records demonstrate ongoing treatment for Plaintiff's chronic pain as well.  As reflected in the records, medical providers have examined Plaintiff and prescribed numerous medications over the years to control Plaintiff's pain.  *See e.g.* Doc. [77-4] at 9-10, 31, 86-88, 103; [77-5] at 3, 34, 82, 100, 118, 134-35, 140; [77-6] at 21, 58, 64, 67-68, 80.  Plaintiff's medical records and testimony confirm that he was prescribed Tramadol (Ultram) in October 2019, shortly before he filed the instant complaint.[2]  Doc. [77-6] at 145-44.  Plaintiff testified that he believes he should be given a higher dose of Ultram or some other opioid to control his

---

[2] At one point in February 2019, Plaintiff's urinalysis revealed he had not been taking Ultram as prescribed. Accordingly, he was required to take Ultram "under direct observation".  Doc. [74-4] at 3; [77-6] at 28-31.  On a later occasion, in October 2019, Plaintiff's Ultram prescription was discontinued temporarily because he refused to submit to blood tests to determine whether he was taking Ultram as prescribed.  Doc. [77-4] at 3; [77-6] at 147; [77-7] at 8.

pain. Although Plaintiff is unhappy with the pain medication regimen, it is undisputed that Plaintiff consistently has been examined by medical personnel and prescribed medication to treat chronic pain. *See Morris v. Corrs. Corp. of Am.*, 627 F.App'x 396, 396 (5th Cir. 2015) (per curiam) ("[D]isagreement with the type of pain medication … does not amount to a claim of deliberate indifference.").

With respect to mental health issues, Plaintiff's medical records are replete with examinations and prescriptions. *See e.g.* Doc. [77-4] at 16, 21, 58, 60-61, 110-11, 120, 141-42; Doc. [77-5] at 17-18, 36, 45, 60-62, 77-79; Doc. [77-6] at 1-3, 34-35, 39-41, 75-76, 135-36. Medical staff have conducted routine psychiatric visits every 90 days. At one point, Plaintiff was prescribed Visatril; however, this medication was discontinued because Plaintiff refused to take it. Plaintiff believes he should be prescribed Wellbutrin, because he feels it is most effective at treating his condition. Plaintiff's disagreement regarding his psychiatric medication does not state a cognizable claim for deliberate indifference. *See Kirby v. Johnson*, 243 F.App'x 877, 879 (5th Cir. 2007); *Casby v. Unknown Named Agents*, No. 1:21-CV-00143, 2021 WL 2389710, at *2 (W.D.La. Sept. 21, 2021).

Plaintiff's entire complaint is nothing more than a disagreement with MDOC medical personnel over the type of medical treatment he should be receiving. He repeatedly demands that he be prescribed antiviral medication to treat his hepatitis C; he repeatedly demands that he be prescribed different medicine or higher dosages of pain medication for his chronic pain; and he repeatedly demands that he be prescribed Wellbutrin rather than other medications and treatments for his mental health issues. Plaintiff is not entitled to the medical treatment of his choosing simply upon request. *Stafford v. Kelly*, No. 09-CV-0133, 2011 WL 2633034 at *2 (N.D. Miss. June 3, 2011). Rather, he is entitled to adequate medical care, which the medical

records demonstrate he has been receiving. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) ("[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference."). Plaintiff has not identified any instance of deliberate indifference to his medical conditions by the named Defendants. Accordingly, Defendants are entitled to a grant of summary judgment.

**Americans with Disabilities Act**

Plaintiff also purports to raise an ADA claim; however, his allegations are nothing more than a claim for inadequate medical care. He contends that prison officials are failing to accommodate his disability (hepatitis C) by failing to prescribe different treatment. He merely seeks different medical care from that which he is currently receiving. A claim of inadequate medical care does not provide a basis for an ADA claim unless medical services are withheld based on an inmate's disability. *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012); *Hay v. Thaler*, 470 F. App'x 411, 418 (5th Cir. 2012); *Marlor v. Madison County, Idaho*, 50 F. App'x 872, 873 (9th Cir. 2002). *See also Cadena v. El Paso County*, 946 F.3d 717, 726 (5th Cir. 2020). ("The ADA is not violated by 'a prison's simply failing to attend to the medical needs of its disabled prisoners.'"); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (holding that medical decisions and medical negligence are not ordinarily within scope of ADA). Plaintiff offers no allegation or evidence that medical care has been withheld because of his hepatitis C.

**Exhaustion**

Defendants argue in the alternative that Plaintiff failed to exhaust administrative remedies; therefore, his complaint should be dismissed without prejudice. Exhaustion of administrative remedies through the prison grievance system is a prerequisite for lawsuits filed

pursuant to 42 U.S.C. § 1983. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies are exhausted. 42 U.S.C. § 1997e(a). The Fifth Circuit takes a "strict approach" to the exhaustion requirement. *See Johnson v. Ford*, 261 Fed. Appx. 752, 755 (5th Cir. 2008). Exhaustion is mandatory for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Alexander v. Tippah County, Miss.*, 351 F.3d 626, 630 (5th Cir. 2003). Dismissal is appropriate where an inmate has failed to properly exhaust the administrative grievance procedure before filing his complaint. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).

A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal". *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). Merely initiating the grievance process or putting prison officials on notice of a complaint is insufficient to meet the exhaustion requirement. The grievance process must be carried through to its conclusion before suit can be filed under the Prison Litigation Reform Act. *Wright*, 260 F.3d at 358. A properly exhausted claim is one which has "complete[d] the administrative review process in accordance with the applicable procedural rules." *Woodford*, 548 U.S. at 88. Those rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007). "[T]he exhaustion requirement hinges on the 'availab[ility]' of administrative remedies." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (alteration in original). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id*. at

8

1859. "Since exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010).

The Mississippi Code grants the MDOC the authority to adopt an administrative review procedure at each of its correctional facilities. Miss. Code Ann. § 47-5-801. The MDOC has implemented an Administrative Remedy Program (ARP) through which prisoners may seek formal review of a complaint or grievance relating to any aspect of their incarceration. Effective September 19, 2010, the ARP is a two-step process. *See Yankton v. Epps*, 652 F.App'x 242, 245 (5th Cir. 2016); *Threadgill v. Moore*, No. 3:10cv378-TSL-MTP, 2011 WL 4388832, *3 n.6 (S.D. Miss. July 25, 2011). The two-step ARP process begins when the inmate submits his written grievance to the prison's legal claims adjudicator within 30 days of the incident of which he complains. The adjudicator screens the grievance and determines whether to accept it into the ARP process; if accepted, the grievance is forwarded to the appropriate official for a First Step Response. *Howard v. Epps*, 2013 WL 2367880, at *2 (S.D. Miss. 2013). If the inmate is dissatisfied with the First Step Response, he may continue to the second step by completing the appropriate ARP form and sending it to the legal claims' adjudicator. The Superintendent, Warden or Community Corrections Director issues the final ruling (the Second Step Response). If the inmate remains unsatisfied, he may then file suit in court. The ARP process is complete once the inmate receives the prison official's Second Step Response. *Gross v. Hall*, No. 3:17-cv-494-CWR-FKB, 2019 WL 4397347, at *2 (S.D.Miss. Aug. 2, 2019).

Arguably Plaintiff has exhausted administrative remedies with regard to his claim for treatment of chronic pain. Specifically, he submitted a grievance to the prison's ARP program

9

on April 28, 2019, complaining that his pain medication had been reduced and that his chronic pain is not being properly controlled. Doc. [74-2] at 19. The ARP process was completed on September 5, 2019, when Plaintiff received a second-step response. *Id.* at 21. He then filed the instant complaint on November 12, 2019, after completion of the ARP process. However, based on a review of the ARP documents, Plaintiff has not exhausted administrative remedies related to medical care for hepatitis C and mental health issues. The ARP documents accompanying Defendants' motion for summary judgment do not mention either of these conditions. On October 17, 2019, he submitted a grievance to the ARP program generally asserting that Dr. Arnold denied him accommodation under the ADA and caused denial of prescriptions and medical services. *Id.* at 5. Plaintiff did not receive a second-step response until March 10, 2020; approximately four months after he filed the instant lawsuit. *Id.* at 7. Accordingly, he did not fully exhaust this grievance until after he initiated litigation. As such it is deemed unexhausted. *See Wendell v. Asher*, 162 F.3d 887, 892 (5th Cir. 1998) (holding that "administrative remedies be exhausted *before* the filing of a § 1983 suit, rather than while the action is pending."); *Evans v. Grubbs*, 2011 WL 2565298, at *2 (S.D.Miss. June 28, 2011). Plaintiff has not filed a response in opposition or otherwise disputed Defendants' summary judgment evidence. Based on the foregoing, the undersigned recommends, in the alternative, that Plaintiff's medical claims relating to hepatitis C and mental health treatment be dismissed without prejudice based on Plaintiff's failure to exhaust administrative remedies.

## **RECOMMENDATION**

Based on the foregoing, the undersigned recommends that Defendants Motions for Summary Judgment be GRANTED, and that Plaintiff's 42 U.S.C. § 1983 prisoner civil rights complaint be dismissed with prejudice as to all claims and all defendants. In the alternative, the

undersigned recommends that Plaintiff's medical care claims relating to hepatitis C and mental health treatment be dismissed without prejudice based on Plaintiff's failure to exhaust administrative remedies.

## **NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court.  A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections.  Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties.  A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court.  Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

      SO ORDERED AND ADJUDGED, this the 17th day of November 2022.

                                                /s/ *Robert P. Myers, Jr.*
                                                ROBERT P. MYERS, JR.
                                                UNITED STATES MAGISTRATE JUDGE